IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICKY B. MOOREFIELD, | ) |
| Petitioner | ) |
| vs. | ) Civil Action No. 06-541 |
| JAMES L. GRACE, Superintendent, THE DISTRICT ATTORNEY OF ALLEGHENY COUNTY, and THE PENNSYLVANIA ATTORNEY GENERAL | ) Judge Terence F. McVerry/ Magistrate Judge Amy Reynolds Hay |
| Respondents | ) |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is recommended that the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be denied and that a certificate of appealability also be denied.

REPORT

Ricky B. Moorefield (Petitioner), a state prisoner, has filed a federal habeas petition attacking his convictions for first degree murder and a firearms violation. At the time of the murder, Petitioner was a juvenile but was tried in adult criminal court. Because the issues are meritless, the petition should be denied.

  A.  **Relevant Procedural History**

The facts relevant to the crimes were recounted by the Superior Court as follows:

> On September 27, 1996, police were called to the scene of a shooting. They found the body of Jason Wingfield, who had been shot three times in the head and face and once in the elbow. During their investigation, the police interviewed several people including Kevin Tuggles [who knew Petitioner] who ultimately told the police that he had seen Appellant shoot the victim. Appellant was then arrested and interviewed by detectives. He gave both oral and audiotaped statements in which he admitted shooting Wingfield. Both in his statement and in his testimony at trial [(Petitioner took the stand in his own defense)] Appellant recounted a confrontation he had with Jeff Lowry [i.e., an acquaintance of both Petitioner and the victim] a day or two before the shooting. As a result of this confrontation

>and subsequent conversations with Lowry and the victim, Appellant stated that he believed either Lowry or the victim intended to kill him [and this provided the reason for him shooting the victim].

Doc. 11-6 at 2 - 3.

After one mistrial, a second trial was held wherein Petitioner was again represented by Attorney Garvin who had represented Petitioner in the mistrial. William Garvin, Esquire, utilized the theory that when Petitioner shot the victim, Petitioner was acting either in a reasonable belief that the victim posed an immediate threat to him and thus Petitioner was acting in self defense or that Petitioner was acting under an unreasonable belief that the victim posed an imminent threat to him and hence, Petitioner was guilty, at most, of voluntary manslaughter.

At the trial, Petitioner took the stand and testified in his own behalf.[1] The jury, apparently discrediting Petitioner's version of the events, convicted Petitioner of first degree murder and the firearms violation. Petitioner was then sentenced to life in prison on the murder conviction.

After trial, new counsel in the person of the Public Defender, was appointed for purposes of appeal to the Superior Court.[2] The Superior Court denied relief. Doc. 11-6 at 2 - 9. Petitioner, through the Public Defender's office, filed a petition for allowance of appeal, Doc. 11-6 at 11 - 30,[3] which was denied. Doc. 11-7 at 3.

---

[1] This Court does not have the transcript of the jury trial. The trial transcript provided by the Allegheny County Clerk of Courts is of the mistrial dated January 25-26, 1999. The jury trial leading to Petitioner's conviction was held from November 30, 1999 to December 3, 1999. Doc. 11-3 at 23.

[2] The issues raised in that direct appeal are found at Doc. 11-4 at 3-4.

[3] The only two issues raised therein were:

>The Superior Court erroneously held that a criminal defendant accused of murder and asserting self-defense is not entitled to a Stonehouse instruction – i.e., a jury instruction that a defendant's knowledge of the decedent's violent history is relevant in determining whether the use of deadly force was reasonable – because a gang associate of that decedent, but not the decedent himself at the time of the fatal encounter, had threatened

Thereafter, Petitioner filed a pro se PCRA petition, in which he specifically indicated that he did not want counsel appointed but wanted to proceed pro se. Doc. 11-7 at 5 - 11 (especially note p. 10 wherein Petitioner checks box declining a lawyer). Notwithstanding Petitioner's desire, the court appointed Attorney Coffey to represent Petitioner. Doc. 11-7 at 13. Attorney Coffey filed a no-merit letter pursuant to Turner/Finley and a motion for leave to withdraw. Doc. 11-7 at 16 - 28. The PCRA Court denied Petitioner relief. Doc. 11-7 at 41.[4] Thereafter, Petitioner filed a pro se brief in the Superior Court. Doc. 11-8 at 2 - 29. The Superior Court, on November 17, 2004, denied Petitioner relief in an unpublished opinion. Doc. 11-9 at 2 - 14.

Thereafter, Petitioner filed a pro se PAA with the Pennsylvania Supreme Court.[5] The Pennsylvania Supreme Court denied the PAA on August 10, 2005. Doc. 11-9 at 45.

---

>   to kill the defendant the day before the encounter.
>
>   The Superior Court erroneously held that the trial court's erroneous "unreasonable belief" voluntary manslaughter instruction – an instruction that first required both provocation and a mistaken fear of danger and then later required that the mistaken fear be objectively reasonable – did not warrant appellate relief merely because the trial court correctly instructed on the concept on other occasions.

Doc. 11-6 at 12.

[4] Petitioner filed an appeal from that PCRA court order denying him relief, which was docketed at No. 1189 WDA 2003 in the Superior Court. Initially, the Superior Court dismissed the appeal based on Petitioner's failure to comply with the requirement that he file a docketing statement. Doc. 11-9 at 26 & 29. However, Petitioner filed a petition for allowance of appeal ("PAA") in the Pennsylvania Supreme Court, on September 15, 2003 at 539 W.D. Allocatur Dkt. 2003, Doc. 11-9 at 16 - 42, which was granted on April 26, 2004 and the case was remanded to the Superior Court for it to address Petitioner's appeal on the merits. Doc. 17-1 at 17.

[5] While the Commonwealth states that the PAA filed by Petitioner from the Superior Court's denial of relief is attached to their answer as exhibit 17, see Doc. 11 at 8, in fact, the PAA attached as Exhibit 17 is actually the first PAA filed by Petitioner, which eventually had been granted after the Superior Court initially dismissed his appeal due to Petitioner's alleged failure to timely file a docketing statement. Although, the Commonwealth fails to supply a copy of the PAA that Petitioner actually filed from the Superior Court's denial of relief on the merits, Petitioner remedies this and supplies a copy of the PAA. Doc. 17-1 at 18 - 38.

3

Petitioner then filed the instant habeas petition. Doc. 6. In that petition, the sole issues raised were: "4th, 5th, 6th [and] 14th Amendment rights, Prosecutorial misconduct. Improper Jury Instruction. Ineffective Assistance of Trial and Appellant Coun[s]el[;] PCRA Court, Pa. Superior Court, Pa. Supreme Court determination[s] contrary to[.]" In the petition filed at Doc. 6, there is an arrow, apparently indicating more was written on the reverse side of the page. However, such a page was absent from the document as pointed out by the Respondents. Doc. 8. The Petitioner rectified that by supplying the additional page. Doc. 10. That additional page only contained the following: "[r]elief: evidentiary hearing, new trial, vacation of conviction and discharge from custody." Doc. 10-1 at 5. The Respondents filed an answer, Doc. 11, in which they pointed out that the habeas petition was unclear as to what issues were being raised, but they responded to parts of the petition as if Petitioner were raising the same issues as he had raised in the state courts in his PCRA proceedings. Doc. 11-1 at 15 - 19. In response, Petitioner filed a document entitled "FIRST AMENDED HABEAS CORPUS PETITION/RESPONSE TO RESPONDENTS['] ANSWER." Doc. 17. To the extent that Petitioner sought to amend his original habeas corpus petition by filing Document 17, such was improper without leave of court, given that the Respondents had already filed their answer. Fed.R.Civ.P. 15(a); Harmon v. Leibach, 2003 WL 22259208, *1 n.1 (N.D. Ill. Oct. 2, 2003). Nevertheless, the court will consider the amended habeas petition as if filed properly.

**B.     Applicable Legal Principles**

1.     <u>AEDPA applies</u>

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was effective April 24, 1996. Because

4

petitioner's habeas petition was filed after the effective date of AEDPA, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001).

        2.        Standard of Review

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C.§ 2254(d)[6] and (e).[7]

---

[6] Section 2254(d) provides as follows:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination

[7] Section 2254(e) provides as follows:

> **(e)(1)** In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> **(2)** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
>   **(A)** the claim relies on--
>     **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>     **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>   **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

However, where the state courts did not address a federal legal issue and the federal habeas court does entertain such federal claim on the merits, then "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA. However, the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence." Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). Accord Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001); Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999)

### C.  Discussion

The amended petition is not entirely clear as to which claims it is raising. The court will address the amended habeas petition in the order in which the amended petition raises the issues.

Petitioner first raises the issue that the PCRA trial court denied him procedural due process. Doc. 17-1 at 2 - 3, ¶ 4. In addition, Petitioner appears to complain that in the PCRA court's denial of relief to him, that court "MADE DETERMINATIONS THAT WERE CLEARLY CONTRARY TO UNITED STATES SUPREME COURT PRECEDENT." Id., at p. 2, ¶ 4. Neither of these claims merits relief. To the extent that Petitioner is complaining of procedural errors in the PCRA proceedings, even if this Court were to assume that there were procedural errors in the PCRA proceedings and that such procedural errors denied him his constitutional rights, such would not be cognizable in this habeas proceeding. For the rule is, errors in the course of a state's post conviction process simply are not cognizable in a federal habeas petition. Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998)("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation. . . . Federal habeas

6

power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment.'").

As to the other complaint that the PCRA court made determinations contrary to United States Supreme Court precedent, Doc. 17-1 at 2, ¶ 4, again, this fails to merit him any relief.  This is so because it is not the PCRA trial court's judgment that this court will review but the last reasoned decision of the state courts that is subject to this court's review for determining whether **that** judgment is contrary to United States Supreme Court precedent.  Weaver v. Palmateer, 455 F.3d 958, 963 n. 6. (9th Cir. 2006) ("In assessing Weaver's habeas claims, we analyze the last reasoned state decision."); Barker v. Fleming, 423 F.3d 1085, 1090 (9th Cir. 2005)("Ordinarily, AEDPA contemplates review of a single state court opinion."); Dobynes v. Hubbard, 81 Fed.Appx. 188, 189 (9th Cir. 2003)("When reviewing a state court's analysis under AEDPA, this court looks to the state's 'last reasoned decision' as the basis for its judgment, here an opinion by the California Court of Appeal.").  In this case, the last reasoned judgment to be reviewed by this court is either the Superior Court's decision in the interlocutory appeal of the suppression hearing, or on direct appeal from the judgment of sentence or the Superior Court's decision on PCRA appeal, depending on which issues this court is called upon to address.

Next Petitioner alleges that his Fourth, Fifth, Sixth and Fourteenth Amendment rights were violated on September 27, 1996, when homicide detectives issued a warrant for Petitioner's arrest based solely on the statements of two juveniles.  Petitioner  argues that the statements of juveniles cannot form the basis of probable cause.  Doc. 17-1 at 3, ¶ 5.  It does not appear that this precise issue was ever raised in the State Courts and hence, is procedurally defaulted.[8]  At least, Petitioner has not shown where the state courts addressed this issue nor has

---

[8] The doctrine of procedural default provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule and such failure would provide a basis for the state courts to decline to address the federal claim on the merits,

7

he shown that their disposition of the issue was contrary to or an unreasonable application of Supreme Court precedent. Even if this court were to address the issue de novo, it is meritless. There is no legal rule that this court is aware of, which holds a juvenile's statements to be incompetent for purposes of providing probable cause to issue an arrest warrant. The court holds that statements by juveniles are not incompetent and may be relied upon to form the basis of probable cause to issue an arrest warrant. Cf. Moss v. Weaver, 525 F.2d 1258, 1260 (5th Cir. 1976)("the District Court erred in ordering that the finding of probable cause must be made on 'competent, sworn testimony'").

    Petitioner next argues that his Fifth, Sixth and Fourteenth Amendment rights were violated when, on October 10, 1986, the police questioned him outside the presence of his mother initially, albeit with her permission and without counsel present, and when later that same day, they elicited a taped confession from Petitioner in the presence of his mother.

    This issue was addressed in the suppression proceedings. The trial court granted the suppression of Petitioner's confession, relying in part on the fact that prior to asking to interview the Petitioner, the detective failed to inform Petitioner and/or his mother that the police had obtained three eyewitness statements asserting that Petitioner shot the victim. The Commonwealth appealed. The Superior Court reversed.[9] The Superior Court's decision explicitly referenced Miranda and found that the Miranda warnings were given to both Petitioner and Petitioner's mother at least twice and that they knowingly and intelligently waived these

---

then such federal claims may not be addressed by the federal habeas court. See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977) (failure to object at trial constituted waiver of issue under state law and hence, a procedural default under federal habeas law); Francis v. Henderson, 425 U.S. 536 (1976) (failure to comply with state procedure requiring challenges to composition of grand jury be made before trial constituted state waiver and, therefore, also constituted procedural default for purposes of federal habeas).

  [9] The Superior Court's decision in the appeal of the suppression hearing, is found in Doc. 11-3 at 2-20.

8

rights.  The Superior Court further held that "the trial court's decision in this case in no way rests upon a finding that appellee's constitutional rights were violated since he asked for and was denied an attorney."  Doc. 11-3 at 11.  In other words, the Superior Court held that the suppression court found that under the totality of the circumstances, Petitioner's confession was coerced, not that his Miranda rights were violated.  The Superior Court found that the suppression court did **not** base its decision on finding that Petitioner's Miranda rights were violated by the Petitioner and/or his mother or relatives asking for an attorney but being denied such.  In fact, the trial court, in justifying its suppression decision, reasoned that:

> The Court is also of the opinion that if Detective Marraway would have informed the Defendant and his mother that he had three written and taped statements implicating the Defendant prior to asking to interview the Defendant alone, that the Defendant's mother or Defendant would not have consented to be interviewed without the presence and consultation of a[n] attorney. The court is also of the opinion that due to the fact Detective Marraway withheld the information about the three written tape [sic] statements that the Defendant was coerced into making an inculpatory statement.

Doc. 11-2 at 46 - 47.  The Superior Court, on appeal, found this to be legal error and concluded that the suppression court employed an incorrect legal standard.  Doc. 11-3 at 12.  In reversing the suppression court, the Superior Court noted that the suppression "court concluded that the confession was involuntary because police 'withheld' the statements by the three witnesses until appellee denied involvement in the murder" and the Superior Court found the suppression court's reason legally erroneous.  Doc. 11-3 at 16.  This court finds that the Superior Court's determination was neither contrary to nor an unreasonable application of Supreme Court precedent.  Moran v. Burbine, 475 U.S. 412, 422 (1986) ("Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right").

In Moran, an attorney hired by the suspect's sister had been trying to contact the suspect who was held by the police, and she was told by the police, falsely, that they would not

9

begin an interrogation that night.  Id., at 416-418.  The suspect was not aware that an attorney had been hired for him.  Id., at 417.  The First Circuit Court of Appeals held that the suspect's waiver of his Miranda rights was ineffective, presumably because not intelligently given in light of the lack of information about an attorney having been hired for him.  The Supreme Court reversed, holding that "[e]vents occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right"  Id., at 422.

If, in Moran the confession was not coerced or unknowing, where the police failed to reveal to the suspect there that an attorney was hired for him, and where the police lied to the attorney who was hired for him, and told her that the suspect would not be questioned further that night, and where the police did not tell the suspect they lied to the attorney, then here, where the police simply did not inform Petitioner or his mother prior to the initiation of questioning that they had evidence in the form of three eyewitness statements implicating Petitioner, *a fortiori*, Petitioner's confession was not coerced and should not have been suppressed here.  In the face of Moran, Petitioner's citation to the cases of Malinski v. New York, 324 U.S. 401 (1945); Stein v. New York, 346 U.S. 156 (1953); Bram v. United States, 168 U.S. 532 (1897)[10] and Malloy v. Hogan, 378 U.S. 1 (1964) are unpersuasive for the proposition that the Superior Court's determination was contrary to these cases or an unreasonable application of them.[11]

---

[10]  To the extent that Petitioner is attempting to argue that the Superior Court used the wrong test for determining coercion and that test is contrary to the standard of Bram, the standard in Bram was abrogated in Arizona v. Fulminante, 499 U.S. 279, 285 (1991) ("Although the Court noted in *Bram* that a confession cannot be obtained by 'any direct or implied promises, however slight, nor by the exertion of any improper influence,' it is clear that this passage from *Bram*, which under current precedent does not state the standard for determining the voluntariness of a confession. . . .")(citations omitted).  Given that Malloy drew its standard directly from Bram, it, too, is inconsistent with the test applicable at the time of the Superior Court's decision. See Malloy, 378 U.S. at 7 (quoting Bram).

[11]  To the extent that Petitioner attempts to argue that the Superior Court's decision was contrary to or an unreasonable application of Williams v. Taylor, 529 U.S. 362 (2000) and/or Early v. Packer, 537

Petitioner's next issues are that his trial counsel was ineffective for (1) failing to raise a claim of Petitioner's factual innocence and (2) not filing a petition for allowance of appeal from the Superior Court's decision overturning the suppression court's decision to suppress Petitioner's tape recorded confession.[12] Doc. 17-1 at 4 - 6, ¶6.  As to the first issue, in light of Petitioner's taped confession to the murder, which was ruled admissible, as well as the three eyewitness statements identifying Petitioner as the killer, it was sound trial strategy for Attorney Garvin not to pursue a factual innocence claim and to attempt to mount a defense of self defense instead, and the Superior Court's holding of no ineffectiveness on this claim based on its implicit determination that counsel cannot be ineffective for failing to raise a meritless claim of innocence was neither contrary to nor an unreasonable application of Supreme Court precedent. Doc. 17-1 at 48 - 49 ("Appellant has failed to develop any claim that Appellant was indeed

---

U.S. 3 (2002), the court notes that those cases were not extant at the time of the Superior Court's decision in the suppression opinion, i.e., May 14, 1998, and hence, cannot be properly considered in the analysis mandated by AEDPA. Williams v. Taylor, 529 U.S. at 412 (holding that the analysis of Supreme Court precedent is limited to "the holdings, as opposed to the dicta, of this Court's decisions **as of the time of the relevant state-court decision**.")(emphasis added).  Even if they were considered, they do not compel a different outcome as the Superior Court's determination of the suppression issue was not contrary to or an unreasonable application of either Williams or Early.

[12]  In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to proving a claim of ineffective assistance of counsel.  First, the defendant must show that counsel's performance was deficient.  This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688.  In reviewing counsel's actions, the court presumes that counsel was effective. Id., at 689.  Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In addition, in undertaking a prejudice analysis, the Court properly considers the strength of the evidence against the defendant because "... a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999) (quoting Strickland, 466 U.S. at 696), cert. dismissed, 527 U.S. 1050 (1999).  The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong.  See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987).

actually innocent. Thus, this claim lacks arguable merit.")(Superior Court slip op at 10-11). Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000) ("counsel cannot be ineffective for failing to raise a meritless claim.").

As to whether it was ineffective for Attorney Garvin not to file an PAA from the Superior Court's adverse suppression decision, this issue was raised in the PCRA proceedings. There are at least two problems with this claim.  First, in light of the above analysis concerning the Superior Court's reasonable holding that Petitioner's taped confession should not have been suppressed, it is not clear that there was any meritorious issue that Attorney Garvin could have raised in the PAA, certainly, Petitioner does not articulate any such meritorious issue to this court, and hence, Attorney Garvin cannot be ineffective for failing to raise any issue that is not meritorious. Id. More importantly perhaps, even if we assume that Attorney Garvin was ineffective in not filing a PAA, which is a discretionary petition for review, ineffectiveness at that stage of the proceedings is not a ground for granting federal habeas relief because at that stage of the proceedings Petitioner had no federal constitutional right to counsel. Wainwright v. Torna, 455 U.S. 586 (1982); Ross v. Moffitt, 417 U.S. 600, 610 (1974).

A claim of ineffectiveness of counsel is cognizable in federal habeas proceedings only if there is a federal right to counsel at the stage when counsel is alleged to have been ineffective. See Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.")(citations omitted).  Here, at the point where Attorney Garvin is alleged to have been ineffective, i.e., after the Superior Court rendered its decision in the suppression appeal, which is during the stage of the discretionary appeal to the Pennsylvania Supreme Court, Petitioner did not have a federal right to counsel. Wainwright v. Torna, 455 U.S. at 587-88 ("Since respondent had no constitutional right

to counsel [in order to file a request for discretionary appeal], he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely."); Ross v. Moffitt, 417 U.S. at 610 (there is no federal constitutional right to counsel to file a discretionary appeal petition). Hence, this ineffectiveness claim does not merit the grant of federal habeas relief.

Petitioner next raises a claim that trial counsel was ineffective for failing to stop the prosecution from presenting to the jury a conspiracy theory in order to convict the Petitioner, since no conspiracy was charged in any indictment. Doc. 17-1 at 5 - 6, ¶ 6. The Superior Court found this issue to have been waived because Petitioner did not cite to any portion of the record that showed that the prosecution did in fact present any conspiracy theory to the jury. Doc. 17-1 at 49. As a corollary, the Superior Court found that "Appellant cites no evidence in the record for this proposition[, i.e., he was convicted under a conspiracy theory]. To the contrary, the record reflects that Appellant was not convicted under a conspiracy theory." Doc. 17-1 at 47, n.7. In light of this finding that the record reflects that Petitioner was not convicted under a conspiracy theory, Petitioner's trial counsel cannot be ineffective for failing to raise a non-meritorious objection to a non-existent conspiracy theory. Werts, 288 F.3d 203.

Alternatively, this court finds that, in light of the overwhelming evidence of his guilt that he actually shot the victim, even if this court assumed that trial counsel was ineffective for failing to raise such an objection to the alleged conspiracy theory, Petitioner cannot establish prejudice on this record.

Petitioner's next issue centers on claims of the ineffectiveness of his direct appeal counsel for failing to raise the issue of Petitioner's actual innocence, and for failing to review transcripts, failing to investigate the prosecution's witnesses, failing to argue the prosecutor's alleged misconduct, and failing to raise the trial court's allegedly improper jury instructions.

Doc. 17-1 at 6 - 8, ¶ 7. The Superior Court appeared to address only one of Petitioner's claims of appellate counsel's ineffectiveness, i.e., failing to argue Petitioner's innocence. The Superior Court found that appellate counsel did raise a claim of actual innocence in the guise of challenging the sufficiency of the evidence, Doc. 17-1 at 46 - 47, and so the Superior Court concluded that this claim is not meritorious. The Superior Court's disposition is neither contrary to nor an unreasonable application of Supreme Court precedent.

  Moreover, as to the failure to raise the issue of Petitioner's innocence on appeal and all the other remaining issues of appellate counsel's alleged ineffectiveness, this court is not persuaded for at least three reasons. First, Petitioner has not convinced this court that the issues he claims were not raised were meritorious and therefore, counsel cannot be deemed ineffective for failing to raise such meritless claims. Werts. Petitioner has not established appellate counsel's ineffectiveness.

  Second, even if the court were to assume that the issues recounted above may have had some merit to them, it is well established that "[t]he Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal. Ellis v. Lynaugh, 873 F.2d 830, 840 (5th Cir. 1989) (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)). Accord Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996)("In particular, it is a well established principle that counsel decides which issues to pursue on appeal, and there is no duty to raise every possible claim.")(citations omitted).

  As counsel is presumed effective, Strickland v. Washington, 466 U.S. at 689, the court presumes that Petitioner's appellate counsel in the exercise of her professional judgment deemed the other issues which she did raise on appeal to be stronger issues and decided not to raise the weaker issues Petitioner recounts above. Petitioner has not rebutted this presumption and indeed, on this record, in this court's judgment, appellate counsel was correct that the issues

14

she raised were much stronger than the issues Petitioner recounts above.  Carter v. Bowersox, 265 F.3d 705, 716 (8th Cir. 2001) (noting "that an attorney can limit the appeal to those issues which he determines to have the highest likelihood of success" and referring to a "presumption that counsel's failure to raise the due process claim was a tactical decision"); Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000)("In applying this [Strickland] test to claims of ineffective assistance of counsel on appeal, however, reviewing courts must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'").  Accordingly, Petitioner fails to show that appellate counsel acted unreasonably in choosing to raise the issues she raised on direct appeal and foregoing the issues Petitioner recounts above.

Third, even if this court were to review all of Petitioner's claims of appellate counsel's ineffectiveness de novo, given that the Superior Court did not appear to address them all, this court would find that Petitioner failed to carry his burden of showing that appellate counsel's alleged shortcomings prejudiced him, that is to say, Petitioner failed to show a reasonable probability that the outcome of the appeal would have been different.  In light of the overwhelming evidence of his guilt, including his own confession and his admission on the stand to shooting the victim, and the testimony of Tuggles, his acquaintance who was an eyewitnesses to the killing, it is reasonably probable that any actual error which appellate counsel could have raised would have been found by the Superior Court to have constituted, at most, harmless error.

Next, Petitioner again raises issues of the PCRA court's procedural failings and error in appointing counsel when Petitioner did not request counsel to be appointed.  Doc. 17-1 at 8 - 10, ¶ 8.  As noted above, these claims, concerning the PCRA proceedings, are not cognizable. Hassine v. Zimmerman, 160 F.3d at 954.

Next, Petitioner argues generally that the Superior Court, in his appeal of the PCRA proceedings, did not conduct a meaningful review of the issues.  Doc. 17-1 at 10 - 12, ¶ 9.

15

To the extent that this is a claimed error in the state post conviction proceedings, it is not cognizable. Id. Morever, this court finds Petitioner's claim to be rebutted by the Superior Court opinion, which demonstrates a meaningful, if not overwhelmingly persuasive, review. In addition to making this general argument, Petitioner appears to argue that the Superior Court disposed of his claim about recanted testimony by the "Commonwealth's star witness" (as Petitioner characterizes him), in a manner contrary to Supreme Court precedent. However, the Superior Court noted that Petitioner raised this issue in his brief before that court basically as an issue that entitled him to an evidentiary hearing on his PCRA petition. Thus limited to the question of entitlement to an evidentiary hearing, the Superior Court addressed this issue as follows:

> Appellant argues that the is entitled to an evidentiary hearing "because the Commonwealth's star witness has come forward and recanted his trial testimony as to who killed the victim in this case." Appellant's brief at 13. Appellant does not further develop the facts of this claim. As noted above, Appellant confessed to the shooting. At trial, he never denied that he shot the victim. Thus, remanding for an evidentiary hearing would serve no useful purpose. This claim fails.

Doc. 17-1 at 44 - 45. Petitioner has not carried his burden to show that this disposition is contrary to or an unreasonable application of federal Supreme Court precedent, assuming that the determination of whether Petitioner was entitled to a PCRA evidentiary hearing is susceptible to the AEDPA contrary to/unreasonable application analysis.

Moreover, to the extent that Petitioner is arguing that the recantation testimony of the star witness, apparently Jeff Lowry, in and of itself merits federal habeas relief, the court is not persuaded for the following reasons. Petitioner himself gave a taped confession in which he admitted to shooting the victim and he testified at trial, consistent with that taped confession, that he, in fact, shot the victim. At his second trial, the testimony of Kevin Tuggles, who had testified at the Petitioner's first trial which ended in a mistrial, was read and therein Kevin Tuggles

testified that he witnessed Petitioner shoot the victim, and that the victim's back was to Petitioner at the time.  In light of this, the trial testimony of Mr. Lowry, his belated recantation testimony simply does not merit relief from Petitioner's conviction.

Finally, nothing that Petitioner has presented to this court merits any form of relief, not even the limited form of granting him an evidentiary hearing in this court.

### D. Certificate of Appealability

A certificate of appealability is required by 28 U.S.C. § 2253(c) before a petitioner who has been denied relief may appeal to a court of appeals.  As amended by AEDPA, section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Petitioner herein has not made a "substantial showing" that he has been denied any of his constitutional rights because he has not shown that jurists of reason would find it debatable whether this court's procedural decisions or decisions on the merits were correct.  See, e.g., Slack v. McDaniel, 529 U.S. 473 (2000).  Accordingly, a certificate of appealability should be denied.

CONCLUSION

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
AMY REYNOLDS HAY
United States Magistrate Judge

Dated:  23 February, 2007

cc:   The Honorable Terence F. McVerry
      United States District Judge

      Ricky B. Moorefield
      ED-4229
      SCI Huntingdon
      1100 Pike Street
      Huntingdon, PA 16654-1112

      Counsel of record via Notice of Electronic Notification